Suzette **DERZAVIS,** Appellant,

v.

**SECURITY STORAGE COMPANY OF WASHINGTON,** Appellee.

No. 95–CV–862.

District of Columbia Court of Appeals.

Submitted Sept. 4, 1997.

Decided Dec. 11, 1997.

---

1. I note, however, that following our remand, Dr. Roberts was admitted to practice in the District.

Suzette Derzavis, pro se.

Stacy E. Finn, Baltimore, MD, was on the brief for appellee.

Before WAGNER, Chief Judge, and KING, Associate Judge, and PRYOR, Senior Judge.

WAGNER, Chief Judge:

Appellant, Suzette Derzavis, appeals from an order of the trial court granting appellee, Security Storage Company of Washington (Security), summary judgment on her complaint for breach of a contract for the storage of household furnishings and personal effects. In her complaint, Derzavis alleged that Security breached the contract by failing to store her property in a reasonably safe manner as a result of which it was damaged. Prior to filing the complaint in this case, Derzavis submitted two claims to Security for damages to the property, which Security paid in full. In turn, Derzavis executed a release discharging Security of liability. In this case, Derzavis seeks a return of all storage fees she paid Security and legal fees. The question raised by this appeal, one not decided previously by this court, is whether a warehouseman is entitled to retain storage fees where he or she has compensated the owner fully for the stored property allegedly damaged while in his care. We hold that where the warehouseman compensates the owner fully for all damages to the stored goods and obtains a release of liability therefor, it is equivalent to proper delivery, and the owner of the property is not entitled to return of the storage charges. Therefore, we affirm.

## I.

On July 13, 1983, Derzavis entered into a contract with Security to provide storage services for Derzavis' books, furniture, and other personal property. Derzavis' property remained in storage with Security from July 13, 1983 to December 1993. Security billed Derzavis monthly, and she paid a total of $12,206.60 in storage fees over the ten-year period. Derzavis retrieved some of her property from Security in 1983, 1986, 1991 and finally in 1993.

After retrieving some of her property from Security's warehouse in 1991, Derzavis made a claim in the amount of $7,258.00 for water or moisture damages to her books. Security paid Derzavis the exact amount of her claim, in consideration of which Derzavis executed a release on September 5, 1991, discharging Security for all liability for damages to the property. Derzavis left the remainder of her property with Security until December 7, 1993, when she requested delivery. On December 18, 1993, she presented a second claim to Security in the amount of $18,800.00 for damages to the remainder of her property. Again, Security paid Derzavis in full for her claimed losses, and she executed a release upon payment on March 1, 1994, discharging Security from all liability for "physical" damages to her property resulting from events on or about December 12, 1993.[1]

---

1. It appears from the record that Derzavis authorized Security to insure the stored goods in a specific amount, which was changed in writing from time to time, under a master policy, and she agreed that Security's liability would be limited to that amount. Both claims were paid by an insurance carrier "by and on behalf of Security Storage Company of Washington," and Derzavis executed releases so stating. Nevertheless, Derzavis seems to contend that she was compensated by her own carrier and that such payments did not absolve Security of its obligation for her losses. We reject these contentions because: (1) she is bound by the terms of the releases, *see Bolling Fed. Credit Union v. Cumis Ins. Soc'y*, 475 A.2d 382, 385 (D.C.1984); and (2) she offered no evidence to refute Security's evidence that the carrier paid on behalf of Security under its master policy. *See* Super. Ct. Civ. R. 56(e); *Ferguson v. District of Columbia*, 629 A.2d 15, 19

On June 17, 1994, Derzavis filed suit against Security seeking damages, including the return of all storage fees she had paid to Security. In response to interrogatories, Derzavis stated that in addition, she seeks in this case $4,372.39 in legal fees and $75.00 for a research fee. Both Derzavis and Security filed motions for summary judgment. The trial court granted Security's motion and denied Derzavis' motion and her subsequent motion for reconsideration. In granting summary judgment for Security, the trial court observed that Security had paid Derzavis the exact amount of her two claims for which she had executed releases discharging Security for any liability arising out of circumstances which resulted in the claims. Concluding that Derzavis had been made whole by the two payments and that the contract did not relieve her of the obligation for storage fees under these circumstances, the trial court ruled that Security was entitled to judgment as a matter of law.

## II.

In reviewing the grant of a motion for summary judgment, we apply the same standard as the trial court does when it initially considers the motion. *Farrington v. Bureau of Nat'l Affairs,* 596 A.2d 58, 59 (D.C.1991), *cert. denied,* 504 U.S. 912, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992) (citing *Young v. Sherwin– Williams Co.,* 569 A.2d 1173, 1175 (D.C. 1990)). "The moving party prevails if the court concludes that there is no genuine issue of fact and that the moving party is entitled to a judgment as a matter of law." *Farrington,* 596 A.2d at 59.

Derzavis argues that the trial court erred in interpreting the law relating to damages recoverable when a warehouseman such as Security is negligent in storing household goods and personal property under contract. She contends on appeal, as she did in the trial court, that she is entitled to a refund of

the storage charges in addition to the compensation which she received for her two claims.

Under the contract between Derzavis and Security, Security is entitled to fees for storing Derzavis' property. By storing and caring for Derzavis' property, Security performed services for which it earned storage charges in accordance with the contract. Had Security returned the property in its pre-storage condition, unquestionably Security would be entitled to the charges provided for by the contract. The controversy arises in this case because Derzavis claims that Security performed its services negligently as a result of which her property was damaged while in Security's care; therefore, she contends, Security is not entitled to retain storage charges for its services.

Although we have not decided the question in this jurisdiction previously, other courts have held that

> a warehouseman is not entitled to storage charges which might accrue *after* the goods in his possession are damaged through his own negligence.

*Lopeman v. Gee,* 40 Wash.2d 586, 245 P.2d 183, 186 (1952) (citing *H.J. Keith Co. v. Booth Fisheries Co.,* 4 Boyce; Del., 218, 87 A. 715 (1913)) (emphasis added); *see also Irving Pulp & Paper v. Dunbar Transfer,* 732 F.2d 511, 516 (6th Cir.1984) warehouseman is not entitled to receive fees for storage accruing solely as a result of his negligent conduct.[2] We need not decide whether to adopt the rule here because there is no evidence in the record that the storage charges continued to accrue after the goods left by Derzavis in Security's possession were damaged or after Security paid the damages and Derzavis executed the final releases.

■ According to the record, Derzavis retrieved certain property in 1991 which she alleged had been damaged, accepted pay-

---

(D.C.1993) (once moving party makes required showing for summary judgment, non-movant's conclusory allegations are insufficient to show genuine issue of material fact in dispute).

**2.** In *Irving Pulp,* a roof collapsed as a result of the warehouseman's negligence and a bailor's property was damaged as a result. 732 F.2d at 513, 515. The owner of the stored property was

not able to remove it until the warehouseman removed the roof, which it failed to do expeditiously. While allowing storage fees for prior months, including the month of the collapse, the court rejected a claim for the period attributable to the warehouseman's negligence in failing to remove the roof. *Id.* at 516.

ment in full for the damaged property, and released all claims resulting from the incident as of April 12, 1991. As far as we can glean from the record, no storage charges were related to these damaged items thereafter. Derzavis does not contend otherwise. Subsequently, Derzavis continued a contractual relationship with Security to store the remainder of her goods. Although additional charges accrued, they were related to the goods which remained in storage. While Derzavis claims that this property was damaged also, the record fails to show that storage charges continued for a period beyond the time that the additional stored property was damaged.[3] Thus, assuming the applicability of the rule from *Lopeman, supra,* Derzavis has not set forth a factual predicate for its application. 245 P.2d at 186. Put another way, there is no showing that additional storage charges accrued for the goods damaged in connection with the April 12, 1991 incident or for goods damaged in connection with the December 12, 1993 incident.[4] *See id.*

In this case, the question of Security's negligence in caring for Derzavis' property is foreclosed to Derzavis because she settled her claims against Security and executed two releases discharging Security from all liability for damages to any and all property resulting from its storage with the company. "A release is a form of contract," by which the parties to it are bound by its terms unless it is invalid for some reason. *Bolling Fed., supra* note 1, 475 A.2d at 385 (citations omitted); *see Interdonato v. Interdonato,* 521 A.2d 1124, 1133 (D.C.1987). There is no claim in this case that the release is invalid; therefore, it is enforceable by its terms. By the terms of the instrument, Derzavis relinquished her right to sue on any claim for damages to her property which was the subject of the release prior to the effective dates listed therein. *See Bolling Fed., supra* note 1, 475 A.2d at 385; *see also Saslaw v. Rosenfeld,* 148 A.2d 311, 312 (D.C.Mun.App.1959). Therefore, Derzavis is barred from asserting a claim for breach of contract or negligence against Security for damages related to the storage of her property.

Having paid Derzavis and obtained from her releases of liability for any and all damages to her property, Security has made good to her on any losses. Where

> a warehouseman, storing goods for another, makes good to that other all losses caused by his negligent storing, it is equivalent to a proper delivery, and entitles him to his storage charges.[5]

*Diamond Ice & Storage Co. v. Klock Produce Co.,* 110 Wash. 683, 189 P. 257, 260 (1920); *accord, Shoreland Freezers, Inc. v. Textile Ice & Fuel Co.,* 241 S.C. 537, 129 S.E.2d 424, 427 (1963); *see Lopeman, supra,* 245 P.2d at 186. The rationale underlying the rule is that once the owner has been paid for all losses, the owner stands in the same position that he or she would have been in if the property had been returned without injury. *Diamond,* 189 P. at 260. The owner of property damaged or destroyed by the negligence of another is entitled to be made whole, but not to be placed in a better position. *Moss v. Stockard,* 580 A.2d 1011, 1035 (D.C.1990) (citations omitted). In light of these principles, we consider the rule set forth in *Diamond* to be reasonable, and it applies to preclude Derzavis' claim.[6] Therefore, Security's payment to Derzavis of the monetary value of

---

3. It is not even clear from the record that all the remaining property was damaged.

4. These are the dates of the occurrences identified in the parties' release; therefore, we accept them as controlling.

5. D.C.Code § 28:7–204 (1996 Repl.) provides that a warehouseman is liable for injuries to goods resulting from his failure to exercise reasonable care under the circumstances. The statute does not address the question of disposition of storage charges.

6. Derzavis' claims for attorney fees and "legal research" fail because (1) the first release clearly bars all claims and the second bars claims with respect to the "goods"; and (2) the American Rule requires each party to bear its own attorney's fees, absent a contractual provision authorizing otherwise. *See Urban Masonry Corp. v. N & N Contractors, Inc.,* 676 A.2d 26, 33 (D.C. 1996); *American Bldg. Maintenance Co. v. L'Enfant Plaza Properties,* 655 A.2d 858, 862 (D.C. 1995). The contract in question does not provide for Security to bear the cost of legal fees.

her personal property is the equivalent of delivering the goods. After her losses were made good, Derzavis stood in the position in which she would have stood had the stored goods been returned to her in due course and without injury. *See Shoreland Freezers, supra,* 129 S.E.2d at 427–28. Therefore, Security is entitled to retain the storage fees. *Diamond, supra,* 189 P. at 260.

For the foregoing reason, the judgment appealed from hereby, is

*Affirmed.*