**Gregory L.A. THOMAS, Plaintiff,**

v.

**Paul KNIGHT, et al., Defendants.**

**No. CIV.A. 02–630(RBW).**

United States District Court,
District of Columbia.

March 31, 2003.

Gregory Thomas, Washington.

Teresa Quon, Esq., Office of Corporation Counsel, Washington.

Nathan Silver, Esq., Bethesda, MD.

John C. Yang, Esq., Wiley, Rein & Fielding, L.L.P., Washington.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court on the defendants' motions to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The plaintiff's complaint seeks both monetary and equitable relief from the defendants for claims involving the disciplinary proceedings related to the plaintiff's disbarment.[2] Upon consider-

---

1. The Court has considered several motions filed by the defendants. The first is Defendants' Motion to Dismiss the Complaint for Failure to State a Claim and for Lack of Subject Matter Jurisdiction filed by defendants Paul Knight and the Board on Professional Responsibility of the District of Columbia Court of Appeals; Leonard H. Becker, Joyce E. Peters, Ross T. Dicker, and the Office of Bar Counsel; the Attorney–Client Arbitration Board; Jerome C. Schaefer, Brian Wolfman, and the Clients' Security Trust Fund; and the District of Columbia Bar ("Defs.' Mot."). The second is Defendant District of Columbia Court of Appeals' Motion to Dismiss, or in the alternative for Summary Judgment ("DCCA Mot."). The Court has also considered a motion to quash service of process filed by defendant Nathan Silver, who also filed a motion for him to be joined as a party with his co-defendants on their disposi-

tive motions. It appears that the plaintiff has failed to execute service upon defendant Silver, as required by Federal Rule of Civil Procedure 4(c)(2), which states that: "[s]ervice may be effected by any person who is not a party and who is at least 18 years of age." Normally, the Court would give a *pro se* plaintiff an opportunity to perfect service of process. *See Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 877 (D.C.Cir.1993); *Smith–Bey v. Cripe*, 852 F.2d 592, 594 (D.C.Cir.1988). However, since the claims against Silver must be dismissed on other grounds, the Court finds it unnecessary to afford the plaintiff the opportunity to effect service of process on defendant Silver.

2. Although the plaintiff asserts claims against several of the defendants in both their individual and official capacities, nothing in the

ation of the parties' submissions and for the reasons set forth below, the Court must grant the defendants' motions to dismiss as the plaintiff's claims are precluded either because the Court lacks jurisdiction under the *Rooker–Feldman* abstention doctrine, the defendants are entitled to absolute judicial immunity, or the plaintiff's challenges to the bar rules are non-justiciable.

### I. *Factual Background*

As a predicate to its legal analysis, the Court finds it appropriate to briefly examine the attorney disciplinary system in the District of Columbia, the plaintiff's actual disciplinary proceedings, and the claims that have been filed by the plaintiff.

### (A) *The District of Columbia Attorney Disciplinary System*

The District of Columbia Court of Appeals ("DCCA") is vested with the authority to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." D.C.Code § 11–2501(a) (2001); *see* Defs.' Mot., Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction ("Defs.' Mem.") at 2. Pursuant to this authority, the DCCA adopted D.C. Bar Rule XI, § 4, which created the Board of Professional Responsibility ("Board"). This rule grants the Board the "power and duty to investigate alleged grounds for attorney discipline, to adopt its own rules and procedures, to appoint Bar Counsel, to appoint Hearing Committees to conduct hearings and to submit findings and recommendations to the Board, and to pre-pare and forward its own findings and recommendations to the court." D.C. Bar Rule XI, § 4(e) (2002).

The Office of Bar Counsel ("Bar Counsel") performs the prosecutorial function of the attorney disciplinary system. Its powers and duties include, among others, the power to "investigate all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of [the DCCA] which may come to the attention of Bar Counsel or the Board ... [and to] prosecute all disciplinary proceedings before Hearing Committees, the Board, and the [DCCA]." D.C. Bar Rule XI, § 6(a). The Hearing Committees of the Board have the power and duty to conduct hearings on formal charges and "submit their findings and recommendations to the Board." D.C. Bar Rule XI, § 5. Once the Hearing Committee gives a recommendation to the Board, the attorneys for either side may file exceptions to the Committee's recommendation pursuant to D.C. Bar Rule XI, § 9(b). After appropriate consideration of the recommendation and exceptions, the DCCA is then required to issue an order. *See* D.C. Bar Rule XI, § 9(g)(1). The DCCA typically will accept the Board's findings, but the court may disregard them, if "they are unsupported by substantial evidence of record" or if acceptance "would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *Id.*

The Clients' Security Trust Fund ("Trust Fund") was created by the DCCA "to consider claims for reimbursement of losses... caused by the dishonest conduct of members of the District of Columbia Bar... provided such member... has

---

complaint would support an allegation that any of the individuals acted outside of their official capacities or outside of their official authority. Therefore, this Court will construe the plaintiff's claims as if they were brought against the defendants only in their official capacities. *See Briggs v. Goodwin,* 569 F.2d 10, 15 (D.C.Cir.1977).

been disbarred or suspended from the practice of law." D.C. Bar Rule XII, § 5 (2002). The Attorney Client Arbitration Board ("ACAB") "was created b[y] the [DCCA] as an alternative dispute resolution mechanism for disputes between attorneys and their clients." Defs.' Mem. at 4. All attorneys are "deemed to have agreed to arbitrate disputes over fees for legal services and disbursements related thereto when such arbitration is requested by a present or former client . . ." D.C. Bar Rule XIII(a) (2002).

**(B) *The Plaintiff's Disciplinary Proceedings***

On November 12, 1999, the plaintiff was disbarred by the DCCA as a result of two legal malpractice claims filed against him. *See In re Thomas,* 740 A.2d 538 (D.C. 1999), *cert. denied,* 529 U.S. 1021, 120 S.Ct. 1425, 146 L.Ed.2d 316 (2000).

In the first disciplinary matter, a former client of the plaintiff filed a complaint with Bar Counsel concerning the plaintiff's alleged mishandling of her escrow account. DCCA Mot., Memorandum of Points and Authorities in Support of Defendant District of Columbia Court of Appeals' Motion to Dismiss, or in the alternative, for Summary Judgment ("DCCA Mem.") at 2. On December 22, 1994, Bar Counsel initiated proceedings against the plaintiff and charged him with six violations of the District of Columbia Rules of Professional Conduct. *Id.* Hearing Committee Number Five ("Committee Five") found the plaintiff guilty of four of the six charges instituted against him, including: (1) commingling of client's funds under the District of Columbia Rules of Professional Conduct, Rule 1.15(a) (2003); (2) misappropriation of client's funds under the District of Columbia Rules of Professional Conduct, Rule 1.15(b) (2003); (3) failing to keep his client reasonably informed under

the District of Columbia Rules of Professional Conduct, Rule 1.4(a) (2003); and (4) engaging in acts of dishonesty under the District of Columbia Rules of Professional Conduct, Rule 8.4(c) (2003). DCCA Mem at 3. The plaintiff was recommended for disbarment by Committee Five. *Id.*

In the second disciplinary matter, another former client of the plaintiff filed a complaint with Bar Counsel regarding the plaintiff's alleged mishandling of a life insurance claim. Bar Counsel charged the plaintiff with violating: (1) Rule 1.15(a) of the Rules of Professional Conduct for failing to safeguard a client's property in his possession in connection with the legal representation he was providing; and (2) Rule XI, § 9(f) of the DCCA's Rules Governing the Bar and Rule 1.15(a) for failing to keep complete records of his handling and disposition of funds belonging to another client. *Id.* at 5. Hearing Committee Number Seven found the plaintiff in violation of both Bar XI, § 9(f) and Rule 1.15(a), and recommended an informal admonition. *Id.*

On May 7, 1998, after the consolidation of the two disciplinary matters, the Board recommended to the DCCA that the plaintiff be disbarred. The plaintiff was subsequently disbarred by the DCCA in *In re Thomas,* 740 A.2d 538. The plaintiff then filed a petition for writ of certiorari ("petition") with the United States Supreme Court, which was denied by the Court on March 20, 2000. *See Thomas v. Dist. of Columbia Court of Appeals Bd. on Prof'l Responsibility,* 529 U.S. 1021, 120 S.Ct. 1425, 146 L.Ed.2d 316 (2000) (denying certiorari).

**(C) *Plaintiff's Claims Filed in this Court***

■■■ On April 3, 2002, following the Supreme Court's denial of his petition, the plaintiff filed a complaint with this Court alleging numerous claims against the de-

fendants involving the disciplinary proceedings he was subject to. Specifically, the plaintiff asserts that: (1) defendants, Knight, Becker, and Dicker, violated the plaintiff's Fifth Amendment right to due process by excessively issuing subpoenas *duces tecum,* Complaint ("Compl.") ¶ 26; (2) all of the defendants violated the plaintiff's Thirteenth Amendment right by either recommending or affirming his disbarment, Compl. ¶ 61; (3) defendants, Board of Governors of the District of Columbia Bar, Knight, Schaefer, Becker, Peters,[3] Dicker, Wolfman, and Silver, made fraudulent communications in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (2000) ("RICO"), Compl. ¶¶ 74–75; and (4) defendant Becker defamed the plaintiff by publishing information about his disciplinary proceedings in the Legal Times in May 1997, Compl. ¶ 81. In addition, the plaintiff seeks declaratory relief as to three issues: (1) whether D.C. Bar R. XI, § 1(c) (2002), which states that, "disciplinary proceedings against an attorney shall not be subject to any period of limitation," is unconstitutional on its face; (2) whether Bar Rule XII, § 5 fails to provide the Trust Fund with the authority to dispense funds as reimbursement of the loss asserted by Silver;[4] and (3) whether Bar Counsel lacked jurisdiction and abused its power under Bar Rule XI, § 18(a) (2002) because it failed to comply with the appropriate notice requirements in issuing subpoenas *duces tecum* pursuant to Super Ct. Civ. R. 5 & 6.[5] Compl. ¶¶ 86(A),(B)(C).

3. The plaintiff has failed to respond to the assertion raised in the defendants' motion to dismiss that Joyce Peters of the Office of Bar Counsel was not employed as a member of the Bar Counsel staff at the time charges against the plaintiff were heard by Bar Counsel. It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendants, a court may treat those arguments that the plaintiff failed to address as conceded. *See FDIC v. Bender,* 127 F.3d 58, 67–68 (D.C.Cir.1997); *Stephenson v. Cox,* Civil Action No. 00–1921, 2002 WL 31106569, at *2 (D.D.C. Sept.23, 2002). Therefore, because the plaintiff has failed to address the defendants' position regarding Ms. Peters, the Court will treat those claims as conceded and the claims against her will be dismissed.

4. Prior to his disbarment, the plaintiff was appointed as the personal representative of an estate. He was later removed from this position and was replaced by defendant Silver. Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ¶¶ 21–27. Silver subsequently filed a complaint with the Trust Fund seeking the reimbursement of funds from the plaintiff. *Id.* ¶ 29. However, Bar Counsel issued a report dismissing the matter and the Trust Fund later denied this reimbursement request, but without prejudice to reconsideration. *Id.* ¶¶ 40–41.

This Court notes that a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Thus, since the plaintiff's challenge to D.C. Bar Rule XII, § 5 is contingent upon: (1) Silver's reinstatement of his claim for reimbursement; and (2) the Trust Fund ordering reimbursement of the funds to Silver, this Court must dismiss this claim because the court has "no idea whether or when such [circumstances will occur or] will be ordered" and thus, the claim is not ripe for review. *Id.* (quoting *Toilet Goods Assn., Inc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967)) (other citation omitted). Accordingly, the plaintiff's challenge to Bar Rule XII, § 5 will be dismissed without prejudice.

5. In addition, the Court notes that although the plaintiff has asserted a class action claim, he has failed to file a motion to certify the class within 90 days of the filing of the complaint as required by this Court's Local Rule 23.1(b). *See* Rules of the United States District Court for the District of Columbia, LCvR 23.1(b). Therefore, this Court will deny the plaintiff's request for class certification and consider his claim only with respect to him-

## II. Standards of Review

### (A) Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the plaintiff to bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F.Supp.2d 15, 18 (D.D.C.1998); *Darden v. United States*, 18 Cl.Ct. 855, 859 (Cl.Ct.1989). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), because the plaintiff has the burden of establishing the Court's jurisdiction, the " 'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F.Supp.2d at 13–14 (citation omitted). Moreover, the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id.* at 13. Finally, the Court notes that in deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986); *Grand Lodge of Fraternal Order of Police*, 185 F.Supp.2d at 14.

### (B) Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624–25. The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

## III. Legal Analysis

### (A) The Rooker–Feldman Abstention Doctrine

 A court is obligated at the outset in every case to determine whether it has

---

self as an individual. *See Martin v. Middendorf*, 1977 WL 821, at *2 (D.D.C. Feb.9, 1977) (dismissing a motion to certify a class pursuant to local rules when it was filed more than ten months after the filing of the complaint).

the jurisdiction to consider the plaintiff's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (a court's jurisdiction to entertain the plaintiff's complaint must be established as a threshold matter). The Court finds it appropriate to examine first whether the jurisdictional proscription of the *Rooker–Feldman* abstention doctrine applies to this case. The *Rooker–Feldman* abstention doctrine derives from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and precludes "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De-Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *see also Gray v. Poole*, 275 F.3d 1113, 1119 (D.C.Cir.2002); *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72 (D.C.Cir.1997). The *Rooker–Feldman* doctrine applies to judicial proceedings and precludes not only those claims that have been already addressed by a state court, but also those that are "inextricably intertwined with the merits of the state-court judgment." *Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir.1989) (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)).

 Turning specifically to the application of the *Rooker–Feldman* doctrine in the attorney disbarment context, including

general challenges to bar rules, this Court finds the District of Columbia Circuit's decision in *Stanton* particularly instructive in this case. The *Stanton* Court stated:

> In promulgating rather than applying bar rules, however, the DCCA acts in a legislative rather than a judicial capacity. Accordingly, a district court confronted with a simple challenge to the validity of such rules is not reviewing a state-court judicial decision and thus has subject matter jurisdiction. Applying *Rooker*–Feldman requires us to draw a line between permissible general challenges to rules and impermissible attempts to review judgments. And *Feldman* also tells us that even a constitutional claim pled as a general attack may be so 'inextricably intertwined' with a state court decision that the district court is in essence being called upon to review the state-court decision.

127 F.3d at 75 (citations omitted).

 Examining the plaintiff's claims in this case, it is clear that his claims pursuant to the Fifth Amendment regarding Bar Counsel's issuance of subpoenas *duces tecum* and his claim that Bar Counsel failed to comply with District of Columbia civil rules in issuing these subpoenas are both directly precluded by the *Rooker–Feldman* doctrine because the DCCA addressed both of these claims in its decision to disbar the plaintiff. *See In re Thomas*, 740 A.2d at 545–46. In addition, the plaintiff's Thirteenth Amendment, RICO, and defamation claims are also barred by the *Rooker–Feldman* abstention doctrine as they are "inextricably intertwined" with the judgment issued by the DCCA in his disciplinary case.[6] The plaintiff's Thirteenth Amendment, RICO, and defamation

---

**6.** It is well understood that a judgment of the DCCA is a "state-court" judgment under the *Rooker–Feldman* abstention doctrine. *See* 28 U.S.C. § 1257 (2002) ("For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."); *Feldman*, 460 U.S. at 463–64, 103 S.Ct. 1303.

claims each involve allegations of wrongdoing during his disciplinary proceedings. Specifically, the plaintiff's Thirteenth Amendment claim alleges that the "Governor, Bar, Board, Arbitration Board, the Trust [Fund] ... had [the] power to prevent or aid in preventing the commission of the acts complained of herein but neglected to do so to [p]laintiff's continuing injury ..." Compl. ¶ 61. The RICO claim's predicate offense asserts that the "Governors, Knight, Schaefer, Becker, Peters, Dicker, Wolfman, and Silver were each employed by or associated with the Bar ... [and] execut[ed a] scheme ... to defraud and to obtain and subrogate [p]laintiff's property and [l]iberty interest[s] ..." *Id.* at ¶¶ 74,77. Finally, the plaintiff's defamation claim asserts that defendant Becker published statements that the plaintiff has misappropriated bank trust funds. *Id.* ¶ 81. Apparently, Bar Counsel published a notice in the "Legal Times" in May 1997 releasing the official reports of the disciplinary proceedings. Defs.' Mem. at 23–24. In any event, the DCCA found that the plaintiff misappropriated client funds and violated several other rules of the bar. *See In re Thomas,* 740 A.2d at 543–44. Accordingly, it is clear that each of these latter three claims are "inextricably intertwined" with the decision to disbar the plaintiff, and therefore this Court lacks the subject-matter jurisdiction to entertain those claims.

### (B) *Absolute Judicial Immunity*

▮ In addition, the Court finds it noteworthy that the DCCA, under its authority to regulate the practice of law in the District of Columbia, has promulgated bar rules providing absolute immunity to all but one of the defendants for conduct based on the exercise of their official duties.[7] D.C. Bar Rule XI, § 19(a) provides that "[m]embers of the Board, its employees, members of Hearing Committees, Bar Counsel, and all assistants and employees of Bar Counsel shall be immune from disciplinary complaint under this rule and from suit for any conduct in the course of their official duties." Similarly, D.C. Bar Rule XII, § 14 provides that "[t]he trustees, staff and agents of the Clients' Security Fund shall be immune from civil liability and disciplinary complaint under this rule and from suit for any conduct in the course of their official duties." Therefore, because all of the defendants, except for defendant Silver, were acting within the scope of their official duties as the disciplinary arm of the DCCA, they are immune from the plaintiff's Thirteenth Amendment,[8] RICO,[9] and defamation[10] claims.

---

7. The Court does not mean to suggest that defendant Silver is entitled to absolute judicial immunity because he was not acting as a member of one of the disciplinary entities. However, all claims directly against him are precluded by the *Rooker–Feldman* doctrine.

8. The Court notes that even if it were to treat the plaintiff's Thirteenth Amendment claim as an equal protection challenge under 42 U.S.C. § 1983, it would still fail, as the plaintiff has failed to demonstrate that he was treated less favorably than similarly situated individuals. *See Branch Ministries v. Rossotti,* 211 F.3d 137, 144 (D.C.Cir.2000) (citation omitted).

9. In addition, although the Court need not substantively address the plaintiff's RICO claim, the Court notes that the plaintiff's complaint fails to adequately set forth the necessary elements of such a claim. *See Western Assocs. Ltd. P'ship v. Market Square Assocs.,* 235 F.3d 629, 633 (D.C.Cir.2001) ("A violation of § 1962(c) of the RICO Act consists of four elements: (1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity.").

10. The plaintiff's defamation claim similarly fails as section 17(a) of D.C. Bar Rule XI requires that "the Hearing Committee proceedings shall be open to the public, and the charges, along with any exhibits introduced

**(C)** *The Plaintiff's Claim Alleging the Unconstitutionality of D.C. Bar Rule XI, § 1(c)*

The plaintiff's final claim is a request for a declaration from this Court that D.C. Bar R. XI, § 1(c) is unconstitutional on its face. Compl. ¶ 86(A). Although this claim lacks any type of particularity, as the plaintiff's complaint fails to provide the purported basis for such a declaration, *see* Defs.' Mem at 25, this Court must take pause and examine whether this claim is "inextricably intertwined" with the decision to disbar him, and thus the Court would lack subject-matter jurisdiction pursuant to the *Rooker*–Feldman abstention doctrine, or whether it is an independent claim generally challenging the constitutionality of a bar rule, whereby this Court would have jurisdiction to entertain the claim. *See Stanton,* 127 F.3d at 75. Either way, the Court will dismiss this claim. In *Richardson v. District of Columbia Court of Appeals,* 83 F.3d 1513 (D.C.Cir.1996), the District of Columbia Circuit Court addressed a constitutional challenge to a bar rule by a suspended attorney and concluded that such a challenge is either precluded by the *Rooker*–Feldman abstention doctrine or by lack of standing. *Id.* at 1516. This is because the plaintiff's challenge to the bar rule was either "inextricably intertwined" to his underlying disciplinary action, and thus barred by *Rooker*–Feldman, or, if independent of the disciplinary action, because the attorney is disbarred, or unable to practice law, he lacks any necessary "personal stake" to comply with standing principles. *Id.* The Circuit Court in *Richardson* commented that "the *actual* application of [the bar rule] is obviously encompassed in the Court of Appeals's order and review barred under *Feldman; imminent* application is not in the cards, as [the plaintiff] has already been" subject to disciplinary action by being suspended or disbarred. *Id.* (emphasis in the original). Thus, the Circuit Court concluded, and this Court finds no reason to hold otherwise, that such a challenge is either barred by the *Rooker*–Feldman abstention doctrine as an attack on the plaintiff's actual disciplinary decision or, if "[a]bsent any actual or imminent application to [the plaintiff], it is doubtful that he would have standing to secure adjudication of his general due process claim." *Id.* (citing *Levin v. Attorney Registration and Disciplinary Commission of the Supreme Court of Ill.,* 74 F.3d 763, 766–68 (7th Cir.1996)) ("after plaintiff was disbarred, he would lack the 'personal stake' needed for an independent constitutional attack on state's rules concerning disbarment") (other citations omitted). Finally, this Court finds it significant that the *Richardson* Court noted the circumstances before it were distinguishable from *Feldman.* This was because even if the *Feldman* plaintiffs, who were challenging both the DCCA's refusal to waive the accreditation requirement for attorneys who had not graduated from American Bar Association accredited law schools and the bar rule under which the District refused to admit such applications, lost their attack on the DCCA's denial of their actual bar admission waiver requests, they would nonetheless have standing to challenge the general rule itself. *Richardson,* 83 F.3d at 1515–16 (noting "[b]y contrast, if the *Feldman* plaintiffs lost their attack on the

---

into evidence, 'shall be available for public inspection.' " Defs.' Mem at 24 (quoting D.C. Bar R. XI, § 17(a)). More importantly, the plaintiff has failed to state a claim for defamation because he has not alleged that the material printed in the Legal Times was false. *See* *Woodfield v. Providence Hosp.,* 779 A.2d 933, 938 (D.C.2001) ("defamation requires that the statements be false …") (citing *Moss v. Stockard,* 580 A.2d 1011, 1022 (D.C.1990) ("truth is an absolute defense in defamation law")).

court's denial of waivers of the accreditation rule, they might still be positioned to attack the rule itself."). However, in this case, as in *Richardson*, the plaintiff no longer has a "personal stake" in the bar rules, as he has now been disbarred.[11]

## IV. *Conclusion*

For the aforementioned reasons, this Court must grant the defendants' motions to dismiss the plaintiff's complaint. This is because this Court lacks the subject-matter jurisdiction to entertain such claims pursuant to the *Rooker–Feldman* abstention doctrine, the defendants enjoy absolute judicial immunity, or the plaintiff's challenges to the bar rules are non-justiciable.[12]

## *ORDER*

Upon consideration of the defendants' motions to dismiss, and for reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the defendants' motions to dismiss are **GRANTED**. It is **FURTHER ORDERED** that the plaintiff's Fifth Amendment, Thirteenth Amendment, RICO, and defamation claims; and his challenge to District of Columbia Bar Rule XI, § 18(a) shall be **DISMISSED WITH PREJUDICE**. It is

**FURTHER ORDERED** that the plaintiff's constitutional challenges to District of Columbia Bar Rule XI, § 1(c) and District

of Columbia Bar Rule XII, § 5 shall be **DISMISSED WITHOUT PREJUDICE**.

---

11. The Court notes that, while it found the plaintiff's challenge to D.C. Bar Rule XII, § 5 not ripe for adjudication at this time, *see supra* note 4, should Silver reinstate a claim for reimbursement against the plaintiff, the plaintiff *may* be able to challenge the constitutionality of Bar Rules XI, § 1(c) and XII, § 5, insofar as then, and only then, would he possibly have a "personal stake" and therefore the necessary standing to bring those claims. For this reason, the plaintiff's constitutional challenges to D.C. Bar Rules XI, § 1(c) and XII, § 5 will be dismissed without prejudice.

12. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.